# LEO A. FISHER III *v.* BIG Y FOODS, INC.
## (SC 18406)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 5—officially released September 21, 2010

*Sandra Rachel Stanfield*, with whom, on the brief, was *David A. Estabrook*, for the appellant (defendant).

*Mark J. Migliaccio*, for the appellee (plaintiff).

*Jack G. Steigelfest* and *Claudia Baio* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*James G. Geanuracos* filed a brief for the Stop and Shop Supermarket Company, LLC, as amicus curiae.

*Opinion*

ROGERS, C. J. This appeal requires us to decide what facts and circumstances give rise to a plaintiff's right to recover under the mode of operation rule, an exception to the traditional premises liability doctrine, which dispenses with the requirement that a plaintiff prove that a business owner had actual or constructive notice

of the specific unsafe condition giving rise to the plaintiff's injury. The defendant, Big Y Foods, Inc., appeals from the judgment of the trial court, rendered after a jury trial, awarding damages to the plaintiff, Leo A. Fisher III, for injuries he sustained when he slipped and fell in a supermarket owned and operated by the defendant.[1] The defendant claims that the trial court improperly: (1) construed and applied Connecticut law on the mode of operation rule; (2) denied the defendant's motions for a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict on the basis of its misconstruction of the law; and (3) confused the jury by instructing it on traditional premises liability principles because the plaintiff had abandoned any claim pursuant to those principles. We agree with the defendant's first two claims[2] and, accordingly, reverse the judgment of the trial court.[3]

The following facts, which are not materially disputed, are relevant to the present appeal. On July 24, 2005, the plaintiff was shopping at the defendant's East Windsor supermarket. As he walked down aisle seven toward the front of the store, looking for an item on the shelving, he slipped and fell on a puddle of liquid,

---

[1] The defendant appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] In light of our resolution of the defendant's first two claims, we need not reach the third. It is clear from the record, and the plaintiff's counsel confirmed at oral argument, that the case was tried solely on a mode of operation theory. Because we agree with the defendant that the evidence was insufficient for the case to go to the jury on that theory, the issue of whether the jury was confused by an improper instruction is moot.

[3] Due to the importance of the issue raised by this appeal and the frequency with which it potentially may arise, we granted the requests of The Stop and Shop Supermarket Company, LLC, and the Connecticut Defense Lawyers Association to appear as amicus curiae and to submit briefs in support of the position advocated by the defendant. To the extent the amici have argued new claims not raised by the parties at trial or on appeal, however, we do not address them.

injuring his knee and shoulder. The plaintiff described the puddle as being about one and one-half feet in diameter, and the liquid as clear and syrupy. There was no broken container near the puddle and the source of the liquid was not apparent,[4] but the plaintiff believed it was fruit cocktail syrup because the liquid contained colored particles and canned fruit was stocked in aisle seven.[5] At the time of the plaintiff's fall, the puddle of liquid appeared undisturbed, without footprints or shopping cart track marks running through it.[6]

The defendant employs porters whose duties include sweeping the floor with dry mops four times throughout the day, beginning at 10 a.m., 1 p.m., 4 p.m. and 7 p.m. A videotape admitted into evidence at trial showed that, seven minutes prior to the plaintiff's fall, porter John Kelley had passed through aisle seven during the course of the 4 p.m. sweep, and a sweep log confirmed that the sweep had been performed.[7] Kelley testified that he saw no spill at that time. Pursuant to the defendant's policy, porters are required to inspect each aisle as it is swept. The defendant's policy generally is to "inspect the store all the time."

The defendant operates its grocery stores in standard modern fashion. The East Windsor store is large, about the size of a football field. Customers are permitted to

---

[4] Although the defendant's employees searched for one-half hour, they could not ascertain the source of the liquid. The employees testified that this was "odd" and "unusual."

[5] The plaintiff's wife, who was shopping with him on the day he fell, also believed the liquid to be fruit cocktail syrup. John Kelley, a porter employed by the defendant, testified that fruit in cans, jars and plastic containers could be found in aisle seven. He believed the liquid looked like juice but acknowledged it could have been fruit cocktail syrup.

[6] Photographs of the spill taken after the plaintiff's fall were admitted into evidence. They depict a puddle consistent with the witnesses' descriptions.

[7] Although the plaintiff presented evidence showing that Kelley performed his sweeping duties faster than some of his colleagues and had not swept every aisle during the 4 p.m. sweep, there is no dispute that he had passed through aisle seven.

roam freely about the premises, remove items from the shelves and place them into their carts or return them to the shelves. The store's aisles have shelving on both sides and signs hanging overhead that alert customers to the location of various products. Michael Messer, a store supervisor, agreed at trial that, "[m]ore or less, Big Y is a self-service type store." He confirmed that, at times, customers cause spills or messes as a result of mishandling items.[8] Messer testified, however, that spills similar to the one at issue were uncommon and that he would not expect the fruit products in aisle seven to break open if dropped. He acknowledged that a glass jar could break, but disagreed that it was foreseeable that a can or plastic cup could fall off a shelf and make a mess. No evidence was presented to the contrary.

On September 26, 2005, the plaintiff commenced this negligence action against the defendant. The operative complaint sounded in traditional premises liability[9] and

---

[8] There is no evidence in the record indicating precisely how often spills occur at the East Windsor store or the relative frequency with which they occur in various locations. Although Messer testified that about six "incident reports" are completed over the course of one year, there is no indication that those reports necessarily concern slip and fall incidents. The only incident report admitted into evidence was the one recording the plaintiff's slip and fall. Kelley also testified that he had witnessed spills, but provided no detail as to their location or frequency.

[9] Typically, under traditional premises liability doctrine, "[f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it. . . . [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 776, 918 A.2d 249 (2007); see also 2 Restatement (Second), Torts § 343, pp. 215–16 (1965).

sought monetary damages. By the commencement of trial, however, this court had issued its decision in *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 791–92, 918 A.2d 249 (2007), recognizing for the first time the "mode of operation" rule, which provides an exception to the notice requirement of traditional premises liability doctrine.[10] Relying on *Kelly*, the plaintiff abandoned his original theory of the case and proceeded solely on a mode of operation theory.[11]

At the close of the plaintiff's case, the defendant moved for a directed verdict. The defendant argued that the plaintiff had failed to present any evidence of the cause or origin of the spill, or that spills of that liquid were a regularly occurring hazardous condition. According to the defendant, the plaintiff could not make out a prima facie case under the mode of operation rule simply by showing that the defendant was a retail store that permitted customers to handle items and that, as a general matter, items sometimes fell to the floor and spilled. Rather, the defendant claimed, the plaintiff needed to prove the existence of some particu-

---

[10] "The mode of operation rule . . . allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 777. Pursuant to the rule, "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk." Id., 791. That prima facie case may be defeated, however, if the defendant produces evidence that it took reasonable measures to prevent accidents such as the one that caused the plaintiff's injury, and the plaintiff fails to establish that those measures did not constitute reasonable care under the circumstances. Id., 791–92. As with traditional premises liability doctrine, the plaintiff bears the ultimate burden of proving negligence. Id.

[11] In *Kelly*, we stated that the newly adopted mode of operation rule "shall be applied to all future cases and, as a general rule, to all previously filed cases in which the trial has not yet commenced as of the date of the release of this opinion." *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 794 n.9.

lar method of doing business within the store that created a heightened risk of danger to customers. The defendant argued that the plaintiff had failed to show that there was anything particularly hazardous about the operation of aisle seven that had created a zone of risk and had led to the spilled liquid. The trial court denied the defendant's motion, reasoning that this court's decision in *Kelly* permitted the plaintiff to proceed under the mode of operation rule.[12]

The case was submitted to the jury solely on the mode of operation theory. The court charged the jury using a standard instruction designed to reflect the rule articulated in *Kelly*. See Conn. Civil Jury Instructions 3.9-17, available at http://www.jud.ct.gov/JI/Civil/part3/3.9-17.htm (last visited September 7, 2010). In a blank space provided to identify the particular mode of operation at issue, the court inserted "self-service supermarket."[13] The defendant excepted to the charge, arguing

[12] The defendant renewed its motion for a directed verdict during jury deliberations, and the trial court again denied the motion.

[13] The court charged the jury, in relevant part, as follows: "*The plaintiff has alleged that his injuries were caused by the mode by which the defendant operated the business, in particular, by the way the defendant designed, constructed or maintained [its] self-service supermarket.* This is called the mode of operation rule. Under this rule, the plaintiff need not show that the defendant had notice of the particular item or defect that caused the injury. In order to obtain damages under this rule, the plaintiff must prove [first] that the mode of operation of the defendant's business gave rise to a foreseeable risk of injury to customers such as the plaintiff and a foreseeable risk would be something that could regularly occur. Two, that the plaintiff's injury was proximately caused by an accident within that zone of risk.

"The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. The defendant has presented evidence that it undertook measures to avoid accidents like the accident that resulted in the plaintiff's injury. Since the defendant has done so, in order to prevail, the burden is on the plaintiff to establish that those steps taken by the defendant to prevent the accident were not reasonable under the circumstances.

"Ultimately the burden is upon the plaintiff to prove that the defendant's mode of operation created a foreseeable risk of injury. It is not the defendant's burden to disprove it. It is not the law that the defendant who runs

again that the plaintiff, to invoke the mode of operation rule, needed to show something more than that the defendant's supermarket generally was a self-service establishment. The jury thereafter returned a verdict in favor of the plaintiff, awarding $54,197.53 in total damages.[14]

Thereafter, the defendant filed motions to set aside the verdict and for judgment notwithstanding the verdict, arguing that it was against the law and the evidence presented at trial. The defendant argued again that the plaintiff had slipped on a substance of unknown origin, that there was no evidence that there was anything particularly hazardous about aisle seven or any other part of the store and that the only claimed negligence was that the defendant "operate[d] as a supermarket and allow[ed] customers to enter the store and take

a business guarantees the safety of those who come to the premises. If a customer, an invitee, is injured because of a negligent act that the defendant cannot reasonably be expected to foresee or guard against, then the defendant is not liable.

"[If] in considering all the credible evidence, you find . . . one, the plaintiff has proved that the defendant's mode of operation gave rise to a foreseeable risk of injury; and two, that the injury of the plaintiff was caused by an accident within the zone of risk; and three, that the steps taken by the defendant to prevent the accident were not reasonable under the circumstances, then you must find for the plaintiff and consider damages.

"If you find the plaintiff has not proved that the defendant's mode of operation gave rise to a foreseeable risk of injury or you find that the injury to the plaintiff was not caused by an accident within that zone of risk or you find that even though the defendant's mode of operation gave rise to a foreseeable risk of injury and the injury of the plaintiff was caused by an accident within the zone of risk but the defendant exercised reasonable care under the circumstances, then you must find for the defendant.

"So there are three elements that the plaintiff must prove to make the mode of operation claim and they'll be on the verdict form. And they must prove all three—the plaintiff must prove all three of those.

"If the defendant can demonstrate that the liquid or spill on which the plaintiff allegedly slipped had fallen to the floor moments before the plaintiff's accident, you should find for the defendant." (Emphasis added.)

[14] The damages award was reduced to $40,178.58 by a collateral source offset.

items off the shelves." Accordingly, the defendant argued, the evidence was insufficient to establish the defendant's negligence under a mode of operation theory.

The trial court denied both of the defendant's postverdict motions, reasoning that *Kelly* applied to all "typical [supermarket spill] cases." In a later issued memorandum of decision, the court "concluded [that] the mode of operation rule [was] generally available for premises liability claims in self-service stores."[15] Moreover, according to the trial court, "[t]he jury could have reasonably concluded from the evidence that the liquid on which the plaintiff fell was spilled from a food container and dropped to the floor, as a result of the self-service nature of the defendant's operation. This spilled liquid would constitute an unsafe condition resulting from the self-service method of operation, requiring the mode of operation charge." This appeal followed.

I

The defendant claims first that the trial court improperly construed and applied Connecticut law on mode of operation. According to the defendant, the mode of operation rule is not triggered simply upon a showing that a retail establishment employs self-service marketing and spills generally occur, but rather, there must be some specific method of operation within the self-service retail establishment that creates a particular regularly occurring hazard and, therefore, a foreseeable risk of injury to customers. The defendant argues that to hold a retailer liable under the mode of operation exception simply because it is generally self-service

---

[15] The trial court was not persuaded by the defendant's argument that, if the court's reasoning was correct, *Kelly* had eliminated the notice requirement for slip and fall cases in virtually all retail establishments, essentially rendering stores strictly liable for slip and fall injuries and insurers of their customers' physical safety.

would amount, in essence, to imposing strict liability upon business owners, effectively making them insurers of the safety of their customers. We agree that the mode of operation rule, as adopted in Connecticut, does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises.[16]

We begin with the applicable standard of review. "[T]he scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is

---

[16] We disagree, however, that when the mode of operation rule does apply, it amounts to the imposition of strict liability on business owners. The rule permits a plaintiff to make out a prima facie case of negligence without the necessity of proving that the defendant had actual or constructive notice of the transitory hazardous condition that caused the plaintiff's injury. A defendant may rebut that case, however, with evidence that it exercised reasonable care under the circumstances, and the plaintiff retains the burden of proving that the steps taken by the defendant were not reasonable. *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791–92. In short, although the mode of operation rule, when it applies, eases substantially a plaintiff's burden of proof in a premises liability matter, it does not eliminate it.

Nevertheless, it is clear that invocation of the mode of operation rule tilts the scale decidedly in a plaintiff's favor. The present case is illustrative. Specifically, the evidence suggested strongly that the substance on which the plaintiff had slipped was freshly spilled. Furthermore, there was unrefuted testimony that fruit cocktail was not likely to spill, and aisle seven indisputably had been swept and inspected minutes before the plaintiff's fall. The jury still found, however, that the defendant had not taken reasonable measures to prevent the plaintiff's accident.

The defendant argues additionally that the trial court improperly applied the mode of operation rule because the plaintiff failed to allege it in his complaint. Because we agree with the defendant's argument that the mode of operation rule was not implicated by the evidence presented in the case; see part II of this opinion; we need not reach this additional argument.

plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 776. The parties do not disagree materially on the facts, but only on whether the mode of operation rule potentially could apply to those facts. According to the defendant, the evidence presented at trial implicated only traditional premises liability doctrine. Because the defendant claims that the trial court's rulings improperly permitted application of the wrong legal standard, our review is plenary. Id.

As an initial matter, we look to the language of the mode of operation rule as we stated it in *Kelly*. We summarized the plaintiff's burden of showing that the rule applies in a particular case as follows: "[A] plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk." Id., 791. Notably, we included the requirement that a plaintiff's injury occur within a "zone of risk." Id. If a "mode of operation" could be self-service merchandising itself, then an entire store necessarily would be rendered a "zone of risk" due to the readily established fact that merchandise, as a general matter, sometimes falls and breaks. Accordingly, the requirement of establishing that an injury occurred within some "zone of risk" essentially would be rendered superfluous.

We next consider the factual context of *Kelly* and the claims raised therein, as the scope of a rule necessarily is informed by the particulars of the case in which it is adopted.[17] Moreover, an opinion must be read as

---

[17] Judicial holdings must be read with reference to the underlying facts of the case. Indeed, any "discussion in a judicial opinion that goes beyond the facts involved in the issues is mere dictum and does not have the force of precedent." *Valeriano* v. *Bronson*, 209 Conn. 75, 91, 546 A.2d 1380 (1988).

a whole, without particular portions read in isolation, to discern the parameters of its holding. See *Matza* v. *Matza*, 226 Conn. 166, 187, 627 A.2d 414 (1993). In *Kelly*, the plaintiff had slipped and fallen on a piece of wet lettuce on the floor near what repeatedly was described as a "self-service salad bar" within the defendant's supermarket. *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 770. In the section of the opinion outlining the factual underpinnings of the plaintiff's claim, we included a detailed description of the salad bar and the surrounding area, the manner in which store patrons served themselves from the salad bar; id.; and the store manager's characterization of the salad bar area as "precarious" and requiring special attention because of the frequency with which food fell to the floor. Id., 772.

When describing the procedural history of the case, we noted the plaintiff's allegation in her complaint that the dangerous condition of the wet lettuce "was the result of the defendant's *method of displaying produce for consumption* and that the defendant had failed to make reasonable inspections *of the salad bar and the surrounding area* in order to discover and remove that condition." (Emphasis added.) Id., 774. Moreover, we observed that the plaintiff, when she urged the trial court to adopt the mode of operation rule, had argued that "*the salad bar was operated* in such a manner that it was foreseeable that customers would spill or drop food from the salad bar to the floor below, thereby creating a dangerous condition." (Emphasis added.) Id.

Finally, in agreeing with the plaintiff that this court should adopt the mode of operation rule, we agreed "that she [had] adduced sufficient evidence at trial to support a finding in her favor under that rule." Id., 775. Specifically, there was testimony "that the *area around the salad bar* was 'precarious' because *customers regularly caused items from the salad bar to fall* to the floor below. Indeed, because the defendant knew of

the dangers associated with maintaining a *self-service salad bar*, the defendant had a policy of stationing an attendant at the salad bar for the purpose of keeping the area clean and safe. Moreover, the plaintiff testified that she fell when she slipped on a 'wet, slimy piece of . . . lettuce' while she was making a salad at the salad bar. This evidence was adequate to permit a finding that *the salad bar created a foreseeable risk of danger to customers . . . and that the plaintiff's fall had resulted from that dangerous condition.*" (Citation omitted; emphasis added.) Id., 793.

Thus, in *Kelly*, we agreed with a claim that a particular method of operation *within* a generally self-service supermarket had created a regularly occurring hazardous condition, and our holding, which included the adoption of the mode of operation rule, necessarily corresponded to that claim.[18] In concluding that the mode of operation rule could apply to the facts of the case, we emphasized evidence that related to the particular method of operating the salad bar and showed that the salad bar was hazardous.

We acknowledge that, in discussing the policy underpinnings of the mode of operation rule, we quoted broad

---

[18] At the outset of the opinion in *Kelly*, we identified the issue to be resolved as whether, pursuant to the mode of operation rule, "a business invitee who is injured by a dangerous condition on the premises may recover without proof that the business had actual or constructive notice of that condition if the business' chosen mode of operation creates a foreseeable risk that *the condition* regularly will occur and the business fails to take reasonable measures to discover and remove it." (Emphasis added.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 769–70. Consistent with this framing, we concluded that the plaintiff, who was injured by slipping on salad material, could recover without proof that the defendant had notice of that material because she had proven that the defendant's method of operating its salad bar created a foreseeable risk that *salad material* regularly would be dropped to the floor and the defendant had failed to take reasonable measures to discover and remove it. In short, the plaintiff had proven that the *particular hazard* which had caused her injury was a regularly occurring condition.

language from cases of other jurisdictions which, read in isolation, might suggest that the rule applies generally throughout self-service retail establishments, because customers in such establishments must move throughout the premises and select items themselves, increasing the potential for spills, and they may be distracted by signs and merchandise displays and not notice such spills. We observed additionally that, in the modern retail environment, duties historically performed by employees now are undertaken by customers, resulting in certain cost savings to the business owner.[19] See id., 778, 781. The foregoing factors undoubtedly have influenced the decisions by many of our sister states to adopt the mode of operation rule or some variation thereof. A close examination of the cases cited in *Kelly* and additional, similar jurisprudence makes clear, however, that in most jurisdictions recognizing the mode of operation rule, it is not triggered by the mere presence of those factors, i.e., simply because the defendant is a retail store that allows customers to remove items from shelves and items sometimes are dropped, but only upon an additional showing that a more specific method of operation *within* a self-service retail environment gave rise to a foreseeable risk of a regularly occurring hazardous condition[20] similar to the particular condition that caused the injury.[21]

---

[19] The lattermost point is debatable. It seems at least equally likely that the cost savings resulting from self-service merchandising have led to lower prices for the consumer rather than increased profits to the business owner. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 794–95 n.1 (*Zarella, J.*, concurring).

[20] A plaintiff may invoke the mode of operation rule by showing either that the hazardous condition that caused his injury had occurred regularly in the past, or that it was inherently foreseeable due to a particular method by which the defendant operated its business.

[21] Although we noted in *Kelly*, after citing cases from twenty-two jurisdictions that had adopted some variation of the mode of operation rule, that there was "a distinct modern trend favoring the rule"; *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 783; we did not elaborate on the breadth with which the rule had been applied in those jurisdictions. As explained herein, the vast majority of those jurisdictions applied it narrowly.

Accordingly, many of the authorities relied upon in *Kelly* involved produce displays or other instances of unwrapped and/or ready to eat food that customers were encouraged to handle, which, according to the courts, made the particular resultant hazard readily foreseeable.[22] See, e.g., *Jasko* v. *F. W. Woolworth Co.*, 177 Colo. 418, 419–20, 494 P.2d 839 (1972) (slice of pizza near counter where pizza was dispensed on sheets of wax paper and no seating was available); *Gump* v. *Wal-Mart Stores, Inc.*, 93 Haw. 417, 419, 5 P.3d 407 (2000)

---

The dissent argues that fidelity to the policy underpinnings of the mode of operation rule requires that we apply the rule broadly to all areas of a self-service establishment. We disagree. Those policy considerations, although significant, must be balanced against the reality that virtually all modern day retail merchandising is self-service and that any other model would be unworkable and unacceptable to most consumers, and the competing policy consideration, often cited in slip and fall jurisprudence, that businesses are not general insurers of their customers' safety. We conclude that a relaxation of the traditional rules of premises liability in certain circumstances, rather than a complete abrogation of those rules, strikes the fairest balance.

[22] The mode of operation rule most typically is applied in such circumstances. See *Nisivoccia* v. *Glass Gardens, Inc.*, 175 N.J. 559, 565, 818 A.2d 314 (2003) ("A location within a store where a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area. A mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a hazardous condition."); *Schmidt* v. *Coogan*, 135 Wn. App. 605, 610, 145 P.3d 1216 (2006) (mode of operation rule typically applies "when the slip-and-fall happens in an area where there is constant handling of slippery products"), rev'd on other grounds, 162 Wn. 2d 488, 173 P.3d 273 (2007); *Carlyle* v. *Safeway Stores, Inc.*, 78 Wn. App. 272, 276, 896 P.2d 750 ("[c]ertain departments of a store, such as the produce department, are areas where hazards are apparent and therefore the proprietor is placed on notice by the activity"), review denied, 128 Wn. 2d 1004, 907 P.2d 297 (1995). We disagree with the dissent's assertion that "the only relevant distinction between the self-service merchandising employed in the produce department and that in the rest of the store is . . . the frequency with which accidents might occur." Displays of produce, as well as any other loose, unwrapped food items, are qualitatively different than displays of packaged items. Specifically, they are more readily dropped and, when present on a floor, are more likely to be unnoticed and/or slippery. In short, the potential for a hazardous condition in the area of such displays is more readily foreseeable than in an aisle containing items such as canned goods.

(french fry from fast-food restaurant located inside retail store); *McDonald* v. *Safeway Stores, Inc.*, 109 Idaho 305, 307, 707 P.2d 416 (1985) (melted ice cream on day store had conducted three ice cream displays that provided ice cream to customers, including children); *Jackson* v. *K-Mart Corp.*, 251 Kan. 700, 701, 840 P.2d 463 (1992) (spilled avocado juice from in-store cafeteria that permitted customers to carry food onto shopping floor); *Dumont* v. *Shaw's Supermarkets, Inc.*, 664 A.2d 846, 847 (Me. 1995) (chocolate-covered peanut from bulk, unwrapped candy bin); *Sprague* v. *Lucky Stores, Inc.*, 109 Nev. 247, 248, 849 P.2d 320 (1993) (grape on floor in produce section); *Nisivoccia* v. *Glass Gardens, Inc.*, 175 N.J. 559, 561, 818 A.2d 314 (2003) (grapes displayed in open-topped bags that permitted spillage); *Wollerman* v. *Grand Union Stores, Inc.*, 47 N.J. 426, 429, 221 A.2d 513 (1966) (green beans sold from "open bins on a self-service basis"); *Lingerfelt* v. *Winn-Dixie Texas, Inc.*, 645 P.2d 485, 486 (Okla. 1982) (strawberries heaped in uncovered containers); *Cobb* v. *Skaggs Cos.*, 661 P.2d 73, 74 (Okla. App. 1982) (grapes from open display); *Corbin* v. *Safeway Stores, Inc.*, 648 S.W.2d 292, 294 (Tex. 1983) (grape "directly in front of the [slanted] self-service grape bin");[23] *Canfield* v. *Albertsons, Inc.*, 841 P.2d 1224, 1225 (Utah App. 1992) (lettuce leaf from open " 'farmer's pack display' " in which wilted outer leaves were left intact for customers to remove and discard), cert. denied, 853 P.2d 897 (Utah 1993); *Malaney* v. *Hannaford Bros. Co.*, 177 Vt. 123, 125, 861 A.2d 1069 (2004) (grapes from self-service display); *Strack* v. *Great Atlantic & Pacific Tea Co.*, 35 Wis. 2d

---

[23] In *H. E. Butt Grocery Co.* v. *Resendez*, 988 S.W.2d 218, 218–19 (Tex. 1999), the Supreme Court of Texas distinguished the holding of *Corbin*. It clarified that the "mere display of produce for customer sampling"; id., 218; in that case a bowl of loose grapes, did not necessarily constitute an unreasonable risk of harm to a store's customers. Rather, a plaintiff needed to show that the particular manner in which the store displayed grapes created an unreasonable risk of customers falling on them.

51, 56, 150 N.W.2d 361 (1967) (Italian prune from pile on table in aisle). Some cases did not involve unwrapped food, but still focused on particular hazardous conditions that, the evidence showed, were likely to recur repetitively under the circumstances. See, e.g., *F. W. Woolworth Co.* v. *Stokes*, 191 So. 2d 411, 416 (Miss. 1966) (rainwater regularly tracked inside store by customers on stormy day); *Mahoney* v. *J. C. Penney Co.*, 71 N.M. 244, 249–52, 377 P.2d 663 (1962) (gum or sticky substance on entryway steps frequently littered with gum and trash); *Ciminski* v. *Finn Corp.*, 13 Wn. App. 815, 817–18, 537 P.2d 850 (liquid on floor of self-service cafeteria in particular area where spills tended to occur when food trays were replenished or when customers dropped items), review denied, 86 Wn. 2d 1002 (1975); *Steinhorst* v. *H. C. Prange Co.*, 48 Wis. 2d 679, 681, 684, 180 N.W.2d 525 (1970) (shaving cream from tester cans on self-service cosmetic counter where children were spotted playing); *Buttrey Food Stores Division* v. *Coulson*, 620 P.2d 549, 550–51 (Wyo. 1980) (wet spot inside store entrance when melting snow and ice had accumulated in outside parking lot).[24]

---

[24] Additional cases, not cited in *Kelly*, similarly are focused on a particular repetitive hazard. See, e.g., *McKillip* v. *Smitty's Super Valu, Inc.*, 190 Ariz. 61, 62, 945 P.2d 372 (App. 1997) (waxed paper used in bakery section of store that dispensed, inter alia, cookies to children); *Tom* v. *S. S. Kresge Co.*, 130 Ariz. 30, 31, 633 P.2d 439 (1981) (liquid on floor in store that sold soft drinks from two counters); *Bloom* v. *Fry's Food Stores, Inc.*, 130 Ariz. 447, 448, 636 P.2d 1229 (App. 1981) (grape from loosely stacked bunches piled high in display bin with low lip); *Brookshires Grocery Co.* v. *Pierce*, 71 Ark. App. 203, 205–206, 29 S.W.3d 742 (2000) (grapes on floor in poorly maintained produce department); *Sheehan* v. *Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 781, 863 N.E.2d 1276 (2007) (grapes from easily opened bags on tiered display table); *Garcia* v. *Barber's Super Markets, Inc.*, 81 N.M. 92, 93, 463 P.2d 516 (App. 1969) (water near display of watermelons sitting in ice water); *Wal-Mart Stores, Inc.* v. *Rangel*, 966 S.W.2d 199, 201 (Tex. App. 1998) (water and ice on floor of store with snack bar that sold fountain drinks customers were permitted to carry away), overruled by *Wal-Mart Stores, Inc.* v. *Diaz*, 109 S.W.3d 584, 589 (Tex. App. 2003) (reinstating requirement of proving notice); *Forcier* v. *Grand Union Stores, Inc.*, 128 Vt. 389, 394, 264 A.2d 796 (1970) (banana near self-service, open bins of fruit and vegetables); *Thomason* v. *Great Atlantic & Pacific Tea Co.*, 413

In each of the foregoing cases, the court related the hazardous condition to the particular method of operation at issue, rather than attributing it solely to the general self-service nature of the business establishment. See *Jasko* v. *F. W. Woolworth Co.*, supra, 177 Colo. 420 ("defendant's method of selling pizza" created dangerous condition); *Gump* v. *Wal-Mart Stores, Inc.*, supra, 93 Haw. 418 (specifically limiting application of rule to circumstances of case, i.e., when "a commercial establishment, because of its mode of operation, has knowingly allowed the consumption of ready-to-eat food within its general shopping area"); *McDonald* v. *Safeway Stores, Inc.*, supra, 109 Idaho 307 (upholding trial court's denial of summary judgment to defendant on reasoning that "[t]he mode of operation of the ice cream demo on a very busy Good Friday, combined with the abnormally large crowds and other demos, in and of itself could constitute an act of negligence"); *Jackson* v. *K-Mart Corp.*, supra, 251 Kan. 702, 710–11 (questions for jury on remand were whether dangerous condition due to defendant's allowing customers to carry food and drink onto shopping floor was reasonably foreseeable and, if so, whether defendant had failed to exercise reasonable care); *Dumont* v. *Shaw's Supermarkets, Inc.*, supra, 664 A.2d 848 (holding mode of operation rule potentially applicable because defendant knew "that items with similar characteristics to the chocolate-covered peanuts created an increased hazard to customers"); *Sprague* v. *Lucky Stores, Inc.*, supra, 109 Nev. 251 (noting evidence of "virtually continual debris on the produce department floor"); *Nisivoccia*

F.2d 51, 53 (4th Cir. 1969) (loose bunches of grapes; applying Virginia law); *White* v. *Safeway, Inc.*, Court of Appeals of Washington, Docket No. 35960-0-II, 2008 Wn. App. LEXIS 456, *1 (February 26, 2008) (chicken grease on floor in vicinity of self-service roasted chicken cart); *Rhoades* v. *K-Mart Corp.*, 863 P.2d 626, 631 (Wyo. 1993) (spilled cup of water on floor in store having two separate locations at which customers could purchase beverages).

v. *Glass Gardens, Inc.*, supra, 175 N.J. 565 (method of packaging grapes made it "foreseeable . . . that loose grapes would fall to the ground . . . creating a dangerous condition"); *Wollerman* v. *Grand Union Stores, Inc.*, supra, 47 N.J. 429 ("When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury *that mode of operation* is likely to generate . . . ." [Emphasis added.]); *Mahoney* v. *J. C. Penney Co.*, supra, 71 N.M. 260 (observing that defendant "knew the propensities of its customers to litter the floors and stairway with dangerous substances such as chewing gum"); *Lingerfelt* v. *Winn-Dixie Texas, Inc.*, supra, 645 P.2d 489 (key element of evidence was testimony of three employees that strawberries normally were covered with cellophane for safety reasons); *Cobb* v. *Skaggs Cos.*, supra, 661 P.2d 76–77 (jury could "find that [the defendant] created and maintained a foreseeable, unreasonable risk by displaying the grapes in such a manner without the protection of a table guard or other protective scheme"); *Corbin* v. *Safeway Stores, Inc.*, supra, 648 S.W.2d 294 (noting defendant's awareness "that the grape bin was an unusually hazardous and continual source of slippery material on which customers may fall"); *Canfield* v. *Albertsons, Inc.*, supra, 841 P.2d 1227 (when defendant "chose a method of displaying and offering lettuce for sale where it was expected that third parties would remove and discard the outer leaves from heads of lettuce they intended to purchase . . . [i]t was reasonably foreseeable that . . . some leaves would fall or be dropped on the floor by customers thereby creating a dangerous condition"); *Malaney* v. *Hannaford Bros. Co.*, supra, 177 Vt. 135 (plaintiff had submitted sufficient evidence to avoid directed verdict on issue of "the reasonableness of the

steps taken by [the] defendant to address the known hazard posed by the grape display"); *Ciminski* v. *Finn Corp.*, supra, 13 Wn. App. 823 (plaintiff survived summary judgment by submitting "evidence that there tended to be spills *in the area where she fell*, and that the floor *in this area* was sometimes greasy" [emphasis added]); *Steinhorst* v. *H. C. Prange Co.*, supra, 48 Wis. 2d 684 ("unsafe condition here was substantially caused by the method used to display merchandise for sale," namely, the self-serve shaving soap counter); *Strack* v. *Great Atlantic & Pacific Tea Co.*, supra, 35 Wis. 2d 56 (defendant's liability rested on, inter alia, "the manner in which the Italian prunes were displayed"); *Buttrey Food Stores Division* v. *Coulson,* supra, 620 P.2d 553 ("existence of water on the floor of the store premises was a reasonable probability because of the weather conditions").

We acknowledge that, in a handful of the cases cited in *Kelly,* courts held that the mode of operation rule, or something analogous, was applicable generally to transitory hazardous conditions in self-service retail establishments.[25] See *Safeway Stores, Inc.* v. *Smith,* 658 P.2d 255, 258 (Colo. 1983); *Owens* v. *Publix Supermarkets, Inc.,* 802 So. 2d 315, 331 (Fla. 2001); *Golba* v. *Kohl's Dept. Store, Inc.,* 585 N.E.2d 14, 17 (Ind. App. 1992); *Lanier* v. *Wal-Mart Stores, Inc.,* 99 S.W.3d 431, 436 (Ky. 2003); *Gonzales* v. *Winn-Dixie Louisiana, Inc.,* 326 So. 2d 486, 488 (La. 1976); *Sheil* v. *T.G. & Y. Stores Co.,* 781 S.W.2d 778, 780 (Mo. 1989). In two of the foregoing jurisdictions, however, the courts' decisions subsequently were overruled legislatively, and in two others,

---

[25] The dissent discusses these holdings at length. It is clear, however, that they comprise a distinct minority in a well developed area of law, and that in some instances, their holdings subsequently were rejected. See footnote 26 of this opinion.

the jurisprudential underpinnings for the decisions were weakened substantially by subsequent case law.[26]

When the question has presented itself directly, several courts have clarified that the mode of operation rule is not triggered simply upon a showing that a retail establishment, as a general matter, is self-service. For example, in *Hembree* v. *Wal-Mart of Kansas*, 29 Kan. App. 2d 900, 903, 35 P.3d 925 (2001), the Court of

---

[26] *Owens* was abrogated in part, shortly after it was decided, by the passage of 2002 Fla. Laws, c. 2002-285, § 1, codified at Fla. Stat. § 768.0710 (2007), which eliminated the rebuttable presumption of negligence established by the decision; see footnote 17 of Justice Palmer's dissenting opinion; and replaced it with the rule that the plaintiff in a business premises liability action has the burden of proving that the defendant "acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises." Fla. Stat. § 768.0710 (2) (b) (2007). Subsequently, *Owens* was overruled completely, and traditional premises liability doctrine was reinstated. Specifically, Fla. Stat. § 768.0755, which took effect on July 1, 2010, provides in relevant part: "(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

"(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition . . . ."

*Gonzales* was overruled by the passage of Louisiana Revised Statutes § 9:2800.6 (C) (1) in 1988 and its amendment in 1990; see 1990 La. Acts 1025; which reinstated the requirement that actual or constructive notice for premises liability cases be proven by evidence "that the [hazardous] condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. Rev. Stat. Ann. § 9:2800.6 (2009); see also *Welch* v. *Winn-Dixie Louisiana, Inc.*, 655 So. 2d 309, 314 (La. 1995) (explaining evolution of Louisiana premises liability law).

The courts in *Golba* and *Sheil* relied heavily on language from *Ciminski* v. *Finn Corp.*, supra, 13 Wn. App. 818-19, that appeared to support a broad application of the mode of operation rule. See *Golba* v. *Kohl's Dept. Store, Inc.*, supra, 585 N.E.2d 15-16; *Sheil* v. *T.G. & Y. Stores Co.*, supra, 781 S.W.2d 781. As explained hereinafter, however, Washington's appellate courts, subsequent to *Ciminski*, made clear that the mode of operation rule was a narrow exception to traditional premises liability doctrine and did not apply generally to all self-service operations.

Appeals of Kansas concluded that the mode of operation rule did not apply to a plaintiff's slip and fall at a department store in what was believed to be spilled Noxema skin cream, even though the store "was the type . . . where shoppers were invited to come in and pick up, carry, examine, and purchase merchandise for themselves." Id., 904. It concluded that "[t]he mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition." (Internal quotation marks omitted.) Id., 903. In short, "[t]he rule is not intended to uniformly cover all self-service situations." (Emphasis added.) Id., 904.

In *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 401, 733 P.2d 283 (1987), the Supreme Court of Arizona stated that application of the mode of operation rule was not limited "to produce or pizza" and potentially was implicated by spilled creme rinse, but *only* if the plaintiff could show that it was reasonably foreseeable that *creme rinse* would be spilled on a regular basis. In other words, the mode of operation rule did not apply upon a showing that spills generally occurred due to customer activity and that the plaintiff slipped in a spilled substance. See also *Contreras* v. *Walgreens Drug Store No. 3837*, 214 Ariz. 137, 138, 140, 149 P.3d 761 (App. 2006) (mode of operation rule inapplicable to plaintiff's fall on slimy blue substance in drugstore; although store manager had testified that spills generally happened twice weekly, no specific evidence was presented as to types, locations of spills).

The law on the scope of the mode of operation rule is perhaps most developed in the state of Washington.

In *Ciminski* v. *Finn Corp.*, supra, 13 Wn. App. 818–19, the case in which the Washington courts first recognized the rule, the Court of Appeals discussed the shift in merchandising methods from individualized clerk-based assistance to a self-service model, how that shift was accompanied by a greater incidence of spilled substances and distracted customers prone to stepping in them and how it resulted in pecuniary benefit to the business owner, making reallocation of risk a matter of fairness.[27] Subsequent Washington jurisprudence made clear, however, that although the foregoing circumstances were factors underlying the jurisdiction's decision to adopt the mode of operation rule, the modern, generally self-service method of merchandising *itself* was not a "mode of operation" that triggers the application of the rule and dispenses with traditional notice requirements.[28]

Specifically, in *Pimentel* v. *Roundup Co.*, 100 Wn. 2d 39, 49, 666 P.2d 888 (1983), the Supreme Court of Washington repudiated the Court of Appeals' language in *Ciminski* "suggest[ing] that the requirement of showing notice is eliminated as a matter of law for all self-service establishments," and instead held that "the requirement of showing notice will be eliminated only if the *particular* self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." (Emphasis added.) Id., 50; see also *White* v. *Safeway, Inc.*, Court of Appeals

---

[27] In deciding *Kelly*, we quoted heavily from *Ciminski*. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 778, 781, 786.

[28] Indeed, in *Ciminski* itself, the Court of Appeals of Washington emphasized not only that the plaintiff had been injured by falling on a slippery substance in a self-service cafeteria, but also that there tended to be spills in the precise area where she had fallen because of the frequent transport of pans of food over that area and the fact that the food items offered to customers were the type that could fall, and furthermore, that the cafeteria was designed so that customers needed to traverse that area to access the restrooms. *Ciminski* v. *Finn Corp.*, supra, 13 Wn. App. 823–24.

of Washington, Docket No. 35960-0-II, 2008 Wn. App. LEXIS 456, *4 (February 26, 2008) ("[t]hat a business is a self-service operation is insufficient, standing alone, to bring a claim for negligence within the [mode of operation] exception"); *Carlyle* v. *Safeway Stores, Inc.*, 78 Wn. App. 272, 277, 896 P.2d 750 (mode of operation rule "does not apply to the entire area of the store in which customers serve themselves"), review denied, 128 Wn. 2d 1004, 907 P.2d 297 (1995).

Instead, the exception is meant to be a narrow one, and "applies only to those areas where risk of injury is continuous or foreseeably inherent in the nature of the business or mode of operation. . . . Thus a plaintiff who slips and falls in a grocery store cannot survive summary judgment by merely raising the inference that the substance causing her fall came from within the store; rather, the plaintiff must show that such spills were *foreseeable in the specific area where she fell*." (Citation omitted; emphasis added; internal quotation marks omitted.) *White* v. *Safeway, Inc.*, supra, 2008 Wn. App. LEXIS *5. Accordingly, in *Carlyle* v. *Safeway Stores, Inc.*, supra, 78 Wn. App. 277, the mode of operation rule did not apply to a leaking bottle of shampoo on the floor in the coffee section of a supermarket, because that type of spill was not shown to be reasonably foreseeable. See also *Schmidt* v. *Coogan*, 135 Wn. App. 605, 612, 145 P.3d 1216 (2006) (same), rev'd on other grounds, 162 Wn. 2d 488, 173 P.3d 273 (2007); *Linehan* v. *Safeway Stores, Inc.*, Washington Court of Appeals, Docket No. 49947-5-I (February 18, 2003) (reversing trial court's denial of summary judgment to defendant when plaintiff, who had slipped on spilled sugar, failed to present "some evidence indicating that the spill was inherently foreseeable in the area where the injury occurred"); *Ingersoll* v. *DeBartolo, Inc.*, 123 Wn. 2d 649, 654–55, 869 P.2d 1014 (1994) (mode of operation rule inapplicable to spilled substance in com-

mon area of mall because plaintiff failed to show that vendors' methods of operation resulted in debris or substances on floor). Conversely, in *White* v. *Safeway, Inc.*, supra, *6–8, the mode of operation rule was held applicable to chicken grease on the floor near a self-serve roasted chicken cart in a supermarket. Because the evidence showed that customers were invited to serve themselves, and the chickens were hot, greasy and packaged in unsealed containers, slippery spills in the vicinity of the cart were reasonably foreseeable.

We conclude by noting that a rule that presumptively established a storekeeper's negligence simply for having placed packaged items on shelves for customer selection and removal, without requiring any evidence that they were displayed in a particularly dangerous manner,[29] would require us to ignore the modern day reality that *all* retail establishments operate in this manner and, given competitive considerations and customer demands, they have no other choice. The North Carolina Court of Appeals, in rejecting a plaintiff's claim that a movie theater's darkened state was a "mode of operation" that had made his trip and fall reasonably foreseeable, made the following salient observation: "[The] plaintiff's argument must fail—for the simple reasoning that, movie theatres could not do business at all if they could not be darkened." *Kearns* v. *Horsley*, 144 N.C. App. 200, 205, 552 S.E.2d 1, review denied, 354 N.C. 573, 559 S.E.2d 179 (2001). Consequently, the claimed " 'mode of operation' is a theatre's *only* method of operation and as such, the theatre cannot be considered negligent [for employing it] but instead, its patrons must be considered to have assumed the risk in order to take part in the activity provided." (Emphasis in original.) Id. Similarly, a modern supermarket's *only* method of operation is to place items on shelves for customer selection and removal. Accordingly, a defendant cannot

---

[29] See generally annot., 61 A.L.R.4th 27 (1988).

be considered negligent solely on the ground that it has employed that method.

When a "dangerous condition arises through means other than those reasonably anticipated from the mode of operation, the traditional burden of proving notice remains with the plaintiff." *Gump* v. *Wal-Mart Stores, Inc.*, supra, 93 Haw. 420; see also *Jackson* v. *K-Mart Corp.*, supra, 251 Kan. 710; *Ingersoll* v. *DeBartolo, Inc.*, supra, 123 Wn. 2d 655. Consequently, when a plaintiff injured by a transitory hazardous condition on the premises of a self-service retail establishment fails to show that a particular mode of operation made the condition occur regularly or rendered it inherently foreseeable, the plaintiff must proceed under traditional premises liability doctrine, i.e., he must show that the defendant had actual or constructive notice of the particular hazard at issue.[30] On the basis of the foregoing analysis, we conclude that the trial court's construction of the mode of operation rule was improper.

## II

The defendant claims next that the trial court improperly denied its motions for directed verdict, to set aside the verdict and for judgment notwithstanding the verdict on the basis of its misconstruction of the law concerning mode of operation. It argues that, because the plaintiff failed to present evidence to support application of the mode of operation theory, the only theory on which the plaintiff chose to try the case, the trial court should have granted its motions. We agree.

"The standards for appellate review of a directed verdict[31] are well settled. Directed verdicts are not

---

[30] See footnote 9 of this opinion.

[31] We need not consider separately whether the trial court improperly denied the defendant's motions to set aside the verdict and for judgment notwithstanding the verdict on the basis of its misconstruction of the law concerning the mode of operation rule. Practice Book § 16-37 permits "a party whose motion for a directed verdict has been denied . . . [thereafter to] move to have the jury's verdict set aside and to have judgment rendered

favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to deny the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163, 914 A.2d 529 (2007). Additionally, if, as a matter of law, the mode of operation rule was not implicated by the circumstances of this case, then the trial court was required to direct a verdict in the defendant's favor. See *Krawczyk* v. *Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988); see also *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 6, 889 A.2d 798 (2006) ("[t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding" [internal quotation marks omitted]).

The evidence presented at trial, viewed in the light most favorable to the plaintiff, reasonably supported a finding that the plaintiff had slipped on fruit cocktail syrup that somehow had leaked from a product originating in the defendant's store. Although circumstantial, the evidence in this regard was substantial. Accordingly, we reject the defendant's argument that the plaintiff's failure to prove the precise cause or origin of the spill

in accordance with its motion for a directed verdict." *Berry* v. *Loiseau*, 223 Conn. 786, 819, 614 A.2d 414 (1992). If the trial court improperly denied the defendant's motion for directed verdict, its denial of the defendant's subsequent motions, which reiterated the same arguments, necessarily was improper.

was fatal to his case. Nevertheless, because no evidence was presented to show that there was anything particularly dangerous about the defendant's method of offering packaged fruit products for sale, making their spillage inherently foreseeable or regularly occurring, the plaintiff failed to make out a prima facie case of negligence under the mode of operation rule. Because the jury could not properly find for the plaintiff on that theory, the only theory on which the plaintiff had proceeded, the trial court's refusal to direct a verdict for the defendant was improper.

The judgment is reversed and the case is remanded with direction to set aside the jury's verdict and to render judgment in favor of the defendant.

In this opinion VERTEFEUILLE, ZARELLA and McLACHLAN, Js., concurred.

PALMER, J., dissenting. In *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 791–92, 918 A.2d 249 (2007), this court adopted the mode of operation rule, a rule of premises liability pursuant to which a business invitee, who is injured on the premises of a self-service business due to a dangerous condition that was a foreseeable consequence of the business' self-service mode of operation, may recover without proof that the business had actual or constructive notice of the dangerous condition if the business failed to take reasonable measures to discover and remove the dangerous condition.[1] Although the

---

[1] Specifically, we concluded that "a plaintiff establishes a prima facie case of negligence upon presentation of evidence that the mode of operation of the defendant's business gives rise to a foreseeable risk of injury to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk. The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. Of course, the finder of fact bears the ultimate responsibility of determining whether the defendant exercised such care. . . . [T]he defendant's burden in such cases is one of production, and . . . the ultimate burden of persuasion to prove negligence—in other words, that the defendant failed to take reasonable steps to address a known hazard—remains

majority does not say so, it overrules our holding in *Kelly* that the mode of operation rule applies to any area of a self-service business in which there exists a foreseeable risk that dangerous conditions will result from the self-service manner in which the business is operated. In particular, the majority concludes that the mode of operation rule applies only when "a more specific method of operation *within* a self-service retail environment [gives] rise to a foreseeable risk of a regularly occurring hazardous condition . . . ." (Emphasis in original.) In other words, the majority reasons that a self-service mode of operation is not a mode of operation for purposes of the mode of operation rule. Thus, under the approach that the majority adopts, the rule does not apply to the entire premises of a self-service operation but, rather, only to discrete areas within a self-service store that are particularly or uniquely hazardous. Because fidelity to the policy concerns underlying the mode of operation rule that we adopted in *Kelly* requires that the rule be applied to all reasonably foreseeable hazards arising out of a business' self-service mode of operation, wherever on the premises these hazards occur, and because those concerns are no less significant now than they were when we decided *Kelly* just three years ago, I would conclude that the trial court properly instructed the jury in accordance with *Kelly*. Accordingly, I respectfully dissent.

The facts, which are set forth in the majority opinion, are undisputed and straightforward, and need not be repeated in detail. It is sufficient merely to highlight some of the key facts, viewed in the light most favorable to the plaintiff, that the jury reasonably could have found. At approximately 4 p.m. on July 24, 2005, the plaintiff, Leo A. Fisher III, was shopping in an aisle of a self-service supermarket in East Windsor owned by

with the plaintiff." (Internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791–92.

the defendant, Big Y Foods, Inc., when he slipped on a puddle of what appeared to be fruit cocktail syrup that was one and one-half feet in diameter and fell, injuring his right knee and left shoulder. Although the plaintiff was unable to establish the source of the puddle, both the store manager, Michael Messer, and one of the store's porters, John Kelley, acknowledged that customers sometimes create messes or spills as a result of moving and handling items. Messer also testified that the defendant had implemented certain policies to remedy these hazards.

On the day of the plaintiff's accident, Kelley was working as a porter. He testified that the defendant's policy required porters to complete four sweeps of the premises each day at 10 a.m. and 1, 4, and 7 p.m. The porters complete their sweeps of each aisle, which is six feet wide, with a dry dust mop or broom approximately three feet wide. Once each sweep was completed, store policy required the porter to complete a "sweep log." The sweep log from the day of the plaintiff's accident indicated that Kelley performed sweeps at 9:45 a.m., 1:15 p.m. and 3:50 p.m., and that each sweep took approximately fifteen minutes. He testified that, in performing his sweeps, he pushed the broom down the center of each aisle once and did not move the broom from the center unless he saw debris. He further testified that he made only one pass through each aisle, that is, he never swept the same aisle twice. Accordingly, Kelley conceded that there were portions of each aisle that did not get swept. Kelley also acknowledged that other porters typically take approximately thirty minutes to complete a sweep.[2] Messer testified, like Kelley, that the broom that the porters used to complete

---

[2] Although Kelley testified that he did not miss an aisle during his sweeps on the day of the plaintiff's accident, surveillance tapes revealed that Kelley missed at least two aisles during his sweep at 3:50 p.m. Kelley, however, did perform a sweep of the aisle in which the plaintiff fell at that time.

each sweep is only three feet wide and that, in order to cover the entire aisle, a porter would have to make a second pass through the aisle. Messer added that store policy does not require porters to make a second pass through each aisle and that he was not surprised that Kelley made only one pass through each aisle.

The defendant's policy also required the completion of an incident report whenever an accident occurrs. Messer acknowledged, however, that much of the incident report relating to the plaintiff's claim was incomplete. Messer did not explain why this was the case.

At the conclusion of trial, the court instructed the jury on the mode of operation rule,[3] identifying the defendant's mode of operation as a "self-service supermarket."[4] The trial court also submitted interrogatories

[3] The court's charge to the jury on the mode of operation rule followed the civil jury instruction on the rule set forth on the judicial branch website. See Conn. Civil Jury Instruction 3.9-17, available at http://www.jud.ct.gov/JI/Civil/part3/3.9-17.htm (last visited September 7, 2010). I note that this form instruction, which cites to *Kelly* as governing authority, expressly includes self-service business operations within the mode of operation rule.

[4] The trial court instructed the jury in relevant part: "The plaintiff has alleged that his injuries were caused by the mode by which the defendant operated the business, in particular, by the way the defendant designed, constructed or maintained [its] self-service supermarket. This is called the mode of operation rule. Under this rule, the plaintiff need not show that the defendant had notice of the particular item or defect that caused the injury. In order to obtain damages under this rule, the plaintiff must prove [first] that the mode of operation of the defendant's business gave rise to a foreseeable risk of injury to customers such as the plaintiff, and a foreseeable risk would be something that could regularly occur. Two, [there must be proof] that the plaintiff's injury was proximately caused by an accident within that zone of risk.

"The defendant may rebut the plaintiff's evidence by producing evidence that it exercised reasonable care under the circumstances. The defendant has presented evidence that it undertook measures to avoid accidents like the accident that resulted in the plaintiff's injury. Since the defendant has done so, in order to prevail, the burden is on the plaintiff to establish that those steps taken by the defendant to prevent the accident were not reasonable under the circumstances.

"Ultimately, the burden is [on] the plaintiff to prove that the defendant's mode of operation created a foreseeable risk of injury. It is not the defen-

to the jury. The first interrogatory provided in relevant part: "Do you find that the [p]laintiff has proven that the [defendant's] mode of operation gave rise to a foreseeable risk . . . that the injury to the [p]laintiff was caused by an accident within that zone of risk and that the steps taken by the [d]efendant to prevent the accident were not reasonable under the circumstances?" The jury answered the first interrogatory in the affirmative. After finding that the defendant did not prove that the plaintiff had been contributorily negligent, the jury awarded damages to the plaintiff. This appeal followed.

I

My first point of disagreement with the majority stems from its interpretation of this court's decision in *Kelly*. Specifically, the majority contends that, in *Kelly*, this court implicitly concluded that the self-service

dant's burden to disprove it. It is not the law that the defendant who runs a business guarantees the safety of those who come to the premises. If a customer, an invitee, is injured because of a negligent act that the defendant cannot reasonably be expected to foresee or guard against, then the defendant is not liable.

"[If] [i]n considering all the credible evidence, you find . . . one, the plaintiff has proved that the defendant's mode of operation gave rise to a foreseeable risk of injury and, two, that the injury of the plaintiff was caused by an accident within the zone of risk and, three, that the steps taken by the defendant to prevent the accident were not reasonable under the circumstances, then you must find for the plaintiff and consider damages.

"If you find [that] the plaintiff has not proved that the defendant's mode of operation gave rise to a foreseeable risk of injury or you find that the injury to the plaintiff was not caused by an accident within that zone of risk or you find that, even though the defendant's mode [of] operation gave rise to a foreseeable risk of injury and the injury of the plaintiff was caused by an accident within the zone of risk . . . the defendant exercised reasonable care under the circumstances, then you must find for the defendant.

"So there are three elements that the plaintiff must prove to make the mode of operation claim . . . .

"If the defendant can demonstrate that the liquid or spill on which the plaintiff allegedly slipped had fallen to the floor moments before the plaintiff's accident, you should find for the defendant."

mode of doing business is not a mode of operation for purposes of the mode of operation rule. In support of this assertion, the majority reasons that, because we concluded in *Kelly* that the rule applies when the plaintiff sustains an injury that is proximately caused by an accident within the zone of risk created by the mode of operation of the business, if self-service constitutes a mode of operation, "then an entire store necessarily would be rendered a 'zone of risk' due to the readily established fact that merchandise, as a general matter, sometimes falls and breaks. Accordingly, the requirement of establishing that an injury occurred within some 'zone of risk' essentially would be rendered superfluous." The majority further indicates that, because *Kelly* involved an accident near a salad bar, the scope of the rule announced in that case necessarily is limited to those facts. In support of this contention, the majority relies on the fact that, in *Kelly*, (1) we included a detailed description of the salad bar, its surrounding area and the way it operated when we described the facts of the case, (2) the plaintiff in *Kelly* alleged in her complaint that the mode of operation causing her injury was the supermarket's operation of the salad bar, and (3) we concluded that the salad bar created a foreseeable risk of danger to customers. As a result, the majority concludes in the present case that, "in *Kelly*, we agreed with a claim that a particular method of operation *within* a generally self-service supermarket had created a regularly occurring hazardous condition, and our holding, which included the adoption of the mode of operation rule, necessarily corresponded to that claim." (Emphasis in original.) For the reasons that follow, I disagree with the majority's contentions.

The majority's first contention, namely, that our inclusion of a "zone of risk" requirement would be rendered superfluous if the self-service operational method itself was deemed a mode of operation, fundamentally misap-

prehends the mode of operation rule that this court adopted in *Kelly*. The requirement that an accident occur within the zone of risk has no bearing on the question before this court, namely, whether self-service constitutes a mode of operation within the purview of the mode of operation rule. Instead, that requirement merely reflects the fact that not all hazardous conditions occurring on the premises of a self-service business arise out of the business' self-service mode of operation. In other words, a customer of a self-service business may be injured by a dangerous condition on the premises of that business that simply has nothing to do with the self-service nature of the business' operation. See, e.g., *Overstreet* v. *Gibson Product Co.*, 558 S.W.2d 58, 61 (Tex. App. 1977, writ ref'd) (grocery store owner not liable when patron bitten by rattlesnake on premises); *Wiltse* v. *Albertson's, Inc.*, 116 Wn. 2d 452, 454, 805 P.2d 793 (1991) (puddle of water resulting from hole in store's roof not related to self-service operation of store). Thus, our articulation of the rule in *Kelly* as requiring that the customer's injury be caused by a hazard within the "zone of risk" most certainly was not intended to suggest that self-service is not a mode of operation for purposes of the mode of operation rule. Rather, the zone of risk requirement, which is nothing more than a different way of expressing the foreseeability requirement, merely ensures that the dangerous condition that led to the injury was causally related to the business' self-service mode of operation, such that the dangerous condition and the resulting injury were a foreseeable risk of that mode of operation.[5]

---

[5] Indeed, a mode of operation rule that does not include a zone of risk requirement would defeat the purpose of such a rule by eliminating the requirement of a nexus between the dangerous condition and the mode of operation. Moreover, such a rule would be fundamentally unfair to self-service businesses because it would render those businesses potentially liable for harm that was not a foreseeable risk of the business' mode of operation.

The majority's second point, that is, that the breadth of the rule enunciated in *Kelly* necessarily is limited by the facts of that case, is similarly unavailing. The fact that the court in *Kelly* engaged in a factual analysis of the defendant's claims is wholly unremarkable; see, e.g., *Singh* v. *Singh*, 213 Conn. 637, 654, 569 A.2d 1112 (1990) ("[l]aw suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case" [internal quotation marks omitted]); and provides no support for the majority's conclusion that self-service is not a mode of operation.[6] Moreover, in *Kelly*, we framed the issue, as required, in accordance with the parties' claims. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 769–70. Even though *Kelly* involved a salad bar, the majority in the present case refers to no language in that decision that supports its interpretation that the rule applies only to salad bars and produce departments. To the contrary, this court's explanation of the rule and the public policies underlying it clearly indicate its broader application.[7] As we stated in *Kelly*, "[t]he

[6] We were required to discuss the salad bar and the foreseeable risks that it created for the purpose of assessing whether the fact finder reasonably could have concluded that the defendant supermarket, Stop and Shop, Inc., failed to take adequate precautions commensurate with those foreseeable risks. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 793–94.

[7] The majority further asserts that "we concluded [in *Kelly*] that the plaintiff, who was injured by slipping on salad material, could recover without proof that the defendant [supermarket] had notice of that material because she had proven that the [supermarket's] method of operating its salad bar created a foreseeable risk that salad material regularly would be dropped to the floor and the [supermarket] had failed to take reasonable measures to discover and remove it. In short, the plaintiff [in *Kelly*] had proven that the particular hazard [that] had caused her injury was a regularly occurring condition." Footnote 18 of the majority opinion. To the extent the majority maintains, for purposes of the present case, that the plaintiff cannot prevail because he failed to prove that fruit cocktail syrup previously had fallen to the floor or that it reasonably was foreseeable that such syrup regularly would fall to the floor, I disagree with the majority's analysis. This is because in mode of operation cases involving the presence on the floor of such hazards as spilled liquids, the issue is not whether it was foreseeable that that particular type of liquid would be on the floor; instead, the inquiry

rule . . . evolved in response to the proliferation of *self-service retail establishments* . . . [and] is rooted in the theory that traditional notice requirements are unfair and unnecessary *in the self-service context.*" (Emphasis added.) Id., 778. We further explained: "The modern self-service form of retail sales encourages . . . patrons to obtain for themselves *from shelves* and containers the items they wish to purchase, and *to move them from one part of the store to another in baskets and shopping carts as they continue to shop for other items, thus increasing the risk of droppage and spillage.*" (Emphasis added; internal quotation marks omitted.) Id. "[M]odern day supermarkets, self-service [markets], cafeterias, fast-food restaurants and other business premises should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business. Indeed, the very operation of many of these types of establishments *requires that the customers select merchandise from the store's displays, which are arranged to invite customers to focus on the displays and not on the floors.* . . . In each of these cases, the nature of the defendant's business gives rise to a substantial risk of injury to customers from slip-and-fall accidents . . . ." (Emphasis added; internal quotation marks omitted.) Id. "In a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees. Thus, *the risk of items being dangerously located on the floor, which previously was created by employees, is now created by other customers.* But it is the very same risk and the risk has been created by the owner by his choice of mode of operation."

focuses on whether it is foreseeable that liquids generally could fall to the floor. See, e.g., *Chiara* v. *Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 401, 733 P.2d 283 (1987) (mode of operation rule potentially applicable to plaintiff's slip and fall on spilled crème rinse when defendant "reasonably could have anticipated that sealed bottles regularly were opened and spilled").

(Emphasis added; internal quotation marks omitted.) Id., 781; see also id., 785 ("[the rule] frequently has been applied in cases involving slip and fall accidents in self-service establishments that were caused by the foreseeable behavior of other customers dropping or spilling merchandise on the floor" [internal quotation marks omitted]).[8] It is abundantly clear from the foregoing language that the rule that we adopted in *Kelly* encompassed hazards throughout the store that represent foreseeable risks arising from the store's self-service mode of operation.[9] Indeed, if we had intended, in *Kelly*, to adopt a rule of the kind that the majority adopts in the present case, we would have used much different language; at no point, however, did we even hint that our holding was limited to a particularly dangerous mode of operation within a self-service business.

We also would have engaged in a much different analysis. The analysis that we did employ in *Kelly* was predicated on our determination that "the mode of operation rule provides the most fair and equitable approach to the adjudication of premises liability claims brought by business invitees seeking compensation for injuries arising out of a business owner's self-service method of operation." Id., 786. We then identified the following four reasons why we had reached that conclusion, each of which applies with full force to a mode of operation

---

[8] This court's summary, in *Kelly*, of the plaintiff's burden of proof under the mode of operation rule also is expressed in language that belies the majority's conclusion in the present case. Specifically, we concluded in *Kelly* that a plaintiff "will make out a prima facie case upon the presentation of evidence from which the fact finder reasonably could find that *the defendant's self-service mode of operation gave rise to a foreseeable risk of injury* to customers and that the plaintiff's injury was proximately caused by an accident within the zone of risk . . . ." (Emphasis added.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 792.

[9] It is ironic, therefore, that the majority claims that *Kelly* "must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding," and yet completely ignores our explanation of the mode of operation rule contained therein.

rule that includes the entire premises of self-service operations, such as supermarkets and department stores.

First, we explained that self-service retailers create foreseeable hazards because, for their own pecuniary benefit, they rely on customers, who generally are less careful than employees, to handle and carry products, increasing the risk of droppage and spillage.[10] Id. Second, we observed that "the essential premise of the rule requiring a business invitee to prove actual or constructive notice of the unsafe condition is incompatible with the self-service method of operation." Id. In support of this assertion, we observed that, because self-service retailers are aware that their method of operation creates a foreseeable risk of harm to customers, the reason for placing the burden on the injured customer to prove actual or constructive notice, namely, the unfairness inherent in imposing liability on a retailer that has no reason to know of a particular hazard, simply is inapplicable. See id., 786–87. Third, we explained that the requirement of actual or constructive notice imposes a nearly "insuperable" burden on injured customers; id., 788; and one that is unfair considering that "premises owners are in a superior position to establish that they did or did not regularly maintain the premises in a safe condition and they are generally in a superior position to ascertain what occurred by making an immediate investigation, interviewing witnesses and taking photographs." *Owens* v. *Publix Supermarkets, Inc.*, 802 So. 2d 315, 330 (Fla. 2001); accord *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 788. Finally, we relied on the fact that a mode of operation rule "encourages self-service

---

[10] We stated that, in light of the fact that self-service retailers realize savings from their self-service mode of operation, "it is appropriate to hold them responsible for injuries to customers that are a foreseeable consequence of their use of that merchandising approach *unless* they take reasonable precautions to prevent such injuries." (Emphasis in original.) *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 786.

businesses to exercise reasonable care in their dealings with customers . . . [by] assigning liability as accurately as possible to those parties that reasonably may foresee harm on their premises. . . . By contrast, a rule requiring proof that a self-service enterprise had actual or constructive notice of an unsafe, transitory condition caused by the foreseeable conduct of a customer would provide little incentive for such an enterprise to adopt and implement policies designed to prevent injuries stemming from that unsafe condition because actual or constructive notice frequently is so difficult to prove." (Citation omitted; internal quotation marks omitted.) *Kelly* v. *Stop & Shop, Inc.*, supra, 789.

These reasons for recognizing a mode of operation rule for self-service enterprises are no less applicable today, in the context of the present case, than they were in *Kelly*. Indeed, in the present case, the jury found that the hazard that had caused the plaintiff's fall was a foreseeable result of the defendant's self-service mode of operation, a determination that was fully supported by the testimony of the porter, Kelley, who stated that he had seen customers create spills as a result of moving items from shelves, and by the testimony of the store manager, Messer, who acknowledged that customers caused items to fall to the floor and that, as a result, the defendant implemented policies to address such mishaps. In light of the foreseeable nature of the hazard in this case, it is both illogical and unfair to revert to the notice requirement that we expressly rejected in *Kelly*.

The majority's construction of the mode of operation rule, however, renders the rule inapplicable to most areas of self-service supermarkets. This result is manifestly inconsistent with the policies that animated our decision in *Kelly*. As we stated in *Kelly*: "[T]he mode of operation rule is most consistent with the general rule that every person has a duty to use reasonable

care not to cause injury to those whom he reasonably could foresee to be injured by his negligent conduct . . . ." (Internal quotation marks omitted.) Id. In particular, the rule offers an appropriate incentive for a self-service business to implement reasonable measures to address the foreseeable consequences of its self-service mode of operation. Id. Conversely, a rule requiring a customer to prove actual or constructive notice of an unsafe condition resulting from his or her foreseeable conduct would not necessarily encourage a business to implement measures aimed at preventing injuries caused by that unsafe condition because it often is difficult to prove such notice. Id.

The majority simply ignores the policy considerations on which we relied so heavily in *Kelly* and therefore fails to explain why the rationale that we articulated in *Kelly* does not lead inescapably to the conclusion that *Kelly* applies to the present case and all others like it. For example, the majority provides no explanation why it is fair or equitable to require the plaintiff in the present case to prove notice but not the plaintiff in *Kelly*. The majority also makes no attempt to explain why, in light of its acknowledgment that the mode of operation rule is not a rule of strict liability, it would be unfair to the defendant to apply that rule in the present case.[11] I submit that the majority avoids these

---

[11] The majority does claim that "invocation of the mode of operation rule tilts the scale decidedly in a plaintiff's favor." Footnote 16 of the majority opinion. To illustrate this otherwise unsubstantiated assertion, the majority refers to the present case, the facts of which, according to the majority, suggest that (1) the substance on which the plaintiff had slipped recently had been spilled, (2) the aisle in which the plaintiff fell had been swept and inspected minutes beforehand, and (3) "fruit cocktail [syrup] was not likely to spill . . . ." Id. The majority is incorrect both with respect to its general proposition and its purported illustration of that proposition. As to the former, the mode of operation rule does not tip the scales in either direction; as we expressly stated in *Kelly*, the rule "provides the most fair and equitable approach to the adjudication of premises liability claims brought by business invitees seeking compensation for injuries arising out of a business owner's self-service method of operation." *Kelly* v. *Stop & Shop, Inc.*, supra, 281

issues because it cannot address them and, at the same time, cannot assert that the extremely limited rule of premises liability that it adopts in the present case, which represents a reversion to this state's pre-*Kelly* premises law, is compatible with our analysis and holding in *Kelly*.[12]

Conn. 786. Indeed, we adopted the mode of operation rule in that case *because it represented an approach that is far more fair and equitable than that under traditional premises liability principles*; see id., 786–91; principles to which the majority reverts in the present case. Moreover, even if it were appropriate for this court to be guided by anecdotal evidence in its resolution of the important issue raised by this appeal, the facts of the present case provide no support for the proposition that the majority advances. Viewing the evidence in the light most favorable to the plaintiff— a governing principle that the majority ignores—the jury reasonably could have concluded that the defendant had not taken reasonable measures to prevent the plaintiff's accident in light of the testimony of both Kelley and Messer that Kelley did not sweep each aisle in its entirety. Specifically, both Kelley and Messer conceded that Kelley made only one pass through each aisle with a broom roughly one half the width of each aisle. Thus, even though, at the time of the accident, the aisle in which the plaintiff fell recently had been swept, the jury reasonably could have concluded that Kelley's performance of that task was deficient, especially in light of the testimony that other porters typically took approximately twice as long to conduct their sweeps. Furthermore, even though the testimony adduced at trial indicated that fruit cocktail syrup was not likely to spill onto the floor, the jury reasonably found that it was foreseeable that liquids of all kinds spilled onto the floor and, therefore, that the defendant was on notice of the need to take reasonable measures to address that hazard.

[12] The majority sets up the proverbial straw man in asserting that, because modern day retailers have no choice but to employ a self-service method of operation, the policy considerations that we found compelling in *Kelly* "must be balanced against . . . the competing policy consideration, often cited in slip and fall jurisprudence, that businesses are not general insurers of their customers' safety." Footnote 21 of the majority opinion. As the majority itself acknowledges, however, the mode of operation rule *does not* make businesses insurers of their customers' safety. See footnote 16 of the majority opinion. Indeed, "[r]equiring the owner of a self-service operation to exercise reasonable care in protecting his business invitees from the foreseeable risks of his method of doing business does not make such owner an insurer of those on his premises. If [the owner] has taken all precautions reasonably necessary to protect his invitees from injury, he is not liable merely because someone is injured on his property." *Ciminski* v. *Finn Corp.*, 13 Wn. App. 815, 823, 537 P.2d 850, review denied, 86 Wn. 2d 1002 (1975); accord *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791. To the

The trial court, on the other hand, properly applied *Kelly* to the facts and circumstances of the present case. Specifically, the trial court rejected the defendant's argument that self-service is not a mode of operation within the meaning of the mode of operation rule, explaining: "[A]s I understand the *Kelly* decision, plaintiffs are allowed to make a mode of operation claim. They have to show that the mode of operation creates a hazardous risk, and the jury would be so instructed. And then also the question would be the reasonableness of the defendant's efforts to ameliorate that risk. So I think . . . the implication of *Kelly* is that these cases

contrary, the mode of operation rule, when it applies, merely dispenses with one element of the plaintiff's prima facie case, namely, that the defendant had actual or constructive notice of the hazardous condition that led to the plaintiff's injury. See *Kelly* v. *Stop & Shop, Inc.*, supra, 275. The plaintiff always retains the burden of proving that the defendant was negligent. Id., 792.

The majority further asserts that "a rule that presumptively establishe[s] a storekeeper's negligence simply for having placed packaged items on shelves for customer selection and removal, without requiring any evidence that they were displayed in a particularly dangerous manner, would require us to ignore the modern day reality that *all* retail establishments operate in this manner and, given competitive considerations and customer demands, they have no other choice. . . . [A] modern supermarket's *only* method of operation is to place items on shelves for customer selection and removal. Accordingly, a defendant cannot be considered negligent solely on the basis that it has employed that method." (Citation omitted; emphasis in original.) Part I of the majority opinion. This analysis fundamentally misconstrues the mode of operation rule, the policies underlying it, and this court's decision in *Kelly*. Specifically, the majority ignores the fact that the application of the mode of operation rule cannot result in a finding of negligence unless the plaintiff can establish that the measures that the defendant employed were unreasonable. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791–92. Indeed, application of the rule does not even give rise to a presumption of negligence. See id. Thus, this court made it clear in *Kelly* that the defendant supermarket in that case could be found liable only if its operation of the salad bar gave rise to foreseeable hazards and the plaintiff proved that the measures undertaken to ameliorate those hazards were not reasonable. Id., 792–93. We concluded that a reasonable fact finder could find the supermarket negligent because the evidence indicated that it had failed to follow its own policies for dealing with the foreseeable hazards attendant to its operation of the salad bar. See id., 793–94.

are going to go to juries on this theory, and the notice is out that [a] plaintiff will have to prove that the mode of operation creates a hazardous condition. And the theory here is that it's [a] self-service store [and] customers [are] taking things off the shelves [which] sometimes results in their dropping things and . . . the claim is that [that] creates a hazardous condition." In my view, this analysis properly reflects both our reasoning and holding in *Kelly*. Because the evidence supported the jury's verdict in favor of the plaintiff, I would affirm the judgment of the trial court, which it rendered in accordance with the jury's verdict.

## II

I also disagree with the majority's assertion that a close examination of case law from other jurisdictions supports its conclusion that the mode of operation rule applies not upon a showing that a business is a self-service business but, rather, only when the plaintiff demonstrates that an aspect of the operation of that business is so inherently dangerous as to give rise to a materially greater risk of harm than that which may be foreseeable merely from the business' self-service method of operation.[13] The majority reaches this conclusion because (1) most mode of operation cases involve produce displays, unwrapped food, ready to eat food that customers were encouraged to handle, or particularly hazardous conditions that were likely to occur repetitively under the circumstances, and (2) in those cases, "[each] court related the hazardous condition to the particular method of operation at issue, rather than attributing it solely to the general[ly] self-service nature of the business establishment." I disagree with the majority that these cases provide support for its asser-

---

[13] In support of this assertion, the majority cites to approximately twenty cases from other jurisdictions.

tion that self-service is not a mode of operation for purposes of the mode of operation rule.[14]

As the cases on which the majority relies make clear, slips and falls are more likely to occur in the vicinity of a produce display or a salad bar than in other areas of a supermarket. Indeed, common sense dictates that this would be the case. This fact, however, does not answer the question presented in this appeal, namely, whether a self-service method of operation, standing alone, is sufficient to trigger the applicability of the mode of operation rule, or whether something more is required. Notably, that question did not present itself in *any* of the cases on which the majority relies in its lengthy string of citations. To the contrary, in most of those cases, *each plaintiff* alleged that a more specific method of operation within a self-service retail environment gave rise to his or her injury, and, therefore, those courts had no occasion to consider whether the defendant's self-service operation triggered application of the rule. See, e.g., *Jasko* v. *F. W. Woolworth Co.*, 177 Colo. 418, 420, 494 P.2d 839 (1972) (plaintiff contended that "[the] defendant's method of selling pizza was one [that] leads inescapably to such mishaps as her own"); *Jackson* v. *K-Mart Corp.*, 251 Kan. 700, 704, 840 P.2d 463 (1992) (plaintiff asserted premises liability claim on basis of defendant's mode of operation, that is, allowing customers to take food and beverages purchased at in-store cafeteria to other parts of store); *Dumont* v. *Shaw's Supermarkets, Inc.*, 664 A.2d 846, 847 (Me. 1995) (plaintiff asserted that defendant's mode of operation, namely, its display of unpackaged, bulk candy, led to her accident); *F. W. Woolworth Co.* v. *Stokes*, 191 So.

---

[14] I note that, even if I were to agree that these cases provide support for the rule that the majority adopts, I would continue to apply the rule that this court adopted in *Kelly* because, in my view, the reasons that persuaded us to adopt the mode of operation rule in *Kelly* are equally applicable to the present factual scenario.

2d 411, 412 (Miss. 1966) ("[the] [p]laintiff's charge of negligence against the defendant, in substance, [was] that on the day she fell it had rained heavily for a considerable time, and the defendant knew or, by the exercise of reasonable care, should have known that customers would bring water into the store on their wearing apparel which would create a slippery condition on the floor hazardous to its customers"); *Lingerfelt* v. *Winn-Dixie Texas, Inc.*, 645 P.2d 485, 486 (Okla. 1982) (plaintiff alleged that "[i]t was reasonably foreseeable that [a] dangerous condition was created by or might arise from the means used by a storekeeper to exhibit commodities for sale" [internal quotation marks omitted]); *Corbin* v. *Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983) ("[the plaintiff] alleged that [the defendant's] chosen self-service method for displaying green grapes in an open, slanted bin above a green linoleum tile floor resulted in an unreasonable risk of customers falling on grapes that have fallen or been knocked to the floor"); *Canfield* v. *Albertsons, Inc.*, 841 P.2d 1224, 1225 (Utah App. 1992) (plaintiff asserted that store's method of displaying lettuce caused her injury), cert. denied, 853 P.2d 897 (Utah 1993); *Malaney* v. *Hannaford Bros. Co.*, 177 Vt. 123, 125–26, 861 A.2d 1069 (2004) (plaintiff asserted that grocery store's method of displaying grapes created known hazardous condition).

I also do not agree with the majority's reasoning that, because many mode of operation cases involve produce displays and the like, the rule applies only in such settings. Although it is true that more spills generally occur in produce sections than in other areas, I am unwilling to conclude that the self-service marketing approach employed in the produce department is so markedly different from that employed in other areas of a store that the mode of operation rule applies only to the former and not the latter. Indeed, the only relevant

distinction between the self-service merchandising employed in the produce department and that in the rest of the store is, as the majority observes, the frequency with which accidents might occur.

By focusing on the frequency with which hazards arise and concluding that the mode of operation rule applies only to "particularly dangerous" modes of operation, the majority confuses the mode of operation rule's applicability with the plaintiff's ability to prevail on a particular claim. This is so because it is axiomatic that the rule applies when the store's self-service mode of operation *made the development of a premise hazard foreseeable*. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 791–92. When this principle is applied to the present case, it is clear that the fact that spills occur more regularly in the produce department than in the aisle in which the plaintiff fell says little about whether spills are, in fact, foreseeable in that aisle. Indeed, as the evidence adduced at trial and the jury's verdict in the present case indicated, the defendant's self-service mode of operation made it foreseeable that items would fall and spill anywhere in the store.

The frequency with which these hazards arise, however, is relevant in assessing whether the defendant adopted and implemented policies reasonably designed to remedy these foreseeable hazards and thus whether the plaintiff can prevail on his claim. Naturally, the area in which a spill occurred is a relevant fact in this analysis. Because spills and other incidents are likely to occur with greater frequency in a produce department than in other areas of a supermarket, the supermarket may need to adopt more exacting safety and precautionary measures in its produce department than in other areas of the store.

By making frequency the benchmark by which it is determined whether the mode of operation rule applies,

rather than treating it as a factor to be considered in assessing whether a self-service store was negligent, the majority has replaced the rule with something else entirely, something that might be called a "particularly dangerous" mode of operation rule. Although other courts have adopted this approach,[15] it is fundamentally inconsistent with the mode of operation rule that we adopted in *Kelly*. See part I of this opinion. Indeed, relying on the fundamental policies underlying the mode of operation rule, several other courts have applied the mode of operation rule to accidents similar to the one in the present case, that is, a relatively infrequent yet foreseeable premises hazard arising generally out of a store's self-service mode of operation.

For example, in *Safeway Stores, Inc.* v. *Smith*, 658 P.2d 255, 256 (Colo. 1983), the plaintiff, Charles L. Smith, Jr., slipped and fell on a substance that resembled hand lotion while walking down an aisle in a grocery store owned by the defendant, Safeway Stores, Inc. (Safeway). Smith brought a negligence action against Safeway, and a jury found in his favor. Id. After the trial court denied Safeway's motion for judgment notwithstanding the verdict or for a new trial, Safeway appealed, claiming that the trial court improperly had denied the motion because Smith had failed to prove that Safeway had actual or constructive notice of the dangerous condition. Id. The Colorado Court of Appeals

---

[15] See, e.g., *Hembree* v. *Wal-Mart of Kansas*, 29 Kan. App. 2d 900, 904, 35 P.3d 925 (2001) ("The evidence . . . was that on the date of the fall, [the defendant] was the type of store where shoppers were invited to come in and pick up, carry, examine, and purchase merchandise for themselves. There was no evidence presented that [the defendant's] mode of operation was unique or created a situation in which dangerous conditions could regularly occur. . . . Instructing on the mode-of-operation rule in cases such as this would result in most establishments being held to a near strict liability standard. Most businesses [currently] operate in a manner that allows customers to serve themselves to some degree. The rule is not intended to uniformly cover all self-service situations.").

affirmed, and Safeway appealed to the Colorado Supreme Court, which affirmed. Id., 260.

The Colorado Supreme Court concluded that the mode of operation rule applied to the facts of *Smith* because, "[i]n a self-service grocery operation, the easy access to the merchandise often results in its spillage and breakage. This, along with the fact that a customer's attention understandably is focused on the items displayed rather than on the floor, creates a dangerous condition." (Internal quotation marks omitted.) Id., 257. In other words, the court concluded, first, that Safeway's self-service mode of operation gave rise to a foreseeable risk of injury to customers and, second, that Smith's injury had been caused by an accident that was within the zone of risk. See id., 257–58. Accordingly, it did not matter to the court that the slippery substance on which Smith slipped was not among the items shelved in the aisle in which the plaintiff was injured. See id., 257 n.3. Moreover, the court did not define the store's mode of operation narrowly; instead, the court focused on the ease with which items were moved and the fact that a customer's attention is focused away from the floor. Id., 257. Thus, the court concluded that the rule applied due to the store's self-service method of operation. See id., 257–58.

The facts of *Sheil* v. *T. G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. 1989), are similar. In *Sheil*, the plaintiff, Harold L. Sheil, was in the automotive section of a store belonging to the defendant, T. G. & Y. Stores Company (T. G. & Y.). Id., 779. As Sheil was approaching the end of an aisle, he tripped over a small, heavy box, close to a floor display. Id. The evidence indicated that management knew that there was a stack of four or five boxes near where Sheil fell but was not aware of an isolated box in that area. Id., 780. Sheil commenced an action, and a jury ultimately found in his favor. See id., 779. T. G. & Y. then appealed, and the Missouri Court of

Appeals reversed the trial court's judgment, concluding that Sheil had failed to establish that T. G. & Y. had notice of the box that had caused Sheil to fall. See id. On appeal to the Supreme Court of Missouri, that court reversed the judgment of the Missouri Court of Appeals. Id., 783.

Commenting on the operation of a self-service business, the Missouri Supreme Court observed that "customers are invited to traverse the aisles and to handle the merchandise. [A] storeowner necessarily knows that customers may take merchandise into their hands and may then lay articles that no longer interest them down in the aisle. If the item is heavy, it is particularly likely that the customer may not put it back from where it came, possibly because of fear of disarranging other merchandise. The storeowner, therefore, must anticipate and must exercise due care to guard against dangers from articles left in the aisle." Id., 780. The court concluded that "the jury could have found that [Sheil] was injured by a hazard that could have been expected in the store by reason of [the] method of merchandizing and that [T. G. & Y.] was derelict in its duty to take reasonable steps to protect customers against the dangers presented by merchandise in the aisle." Id., 782; see also *Golba* v. *Kohl's Dept. Store, Inc.*, 585 N.E.2d 14, 17 (Ind. App. 1992) (summary judgment improper when plaintiff claimed to have slipped on small round object, likely BB, because department store "is charged with the knowledge that its method of operation may result in customers dropping objects onto the ground as they browse through the merchandise").[16]

---

[16] The majority attempts to diminish the import of *Sheil* and *Golba* because they both relied on broad language from the decision of the Washington Court of Appeals in *Ciminski* v. *Finn Corp.*, supra, 13 Wn. App. 815, which the Washington Supreme Court subsequently "repudiated" in *Pimentel* v. *Roundup Co.*, 100 Wn. 2d 39, 49–50, 666 P.2d 888 (1983). *Sheil*, however, was decided in 1989, and *Golba* was decided in 1992. Thus, the cases were decided approximately six and nine years after *Pimentel*, respectively. It stands to reason, therefore, that the courts in *Sheil* and *Golba* were aware

The Kentucky Supreme Court reached the same conclusion in *Lanier* v. *Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 435–37 (Ky. 2003). In that case, the plaintiff, Barbara Ruth Lanier, slipped and fell on a puddle of clear liquid in an aisle in the grocery department of a store owned by the defendant, Wal-Mart Stores, Inc. (Wal-Mart). Id., 433. Lanier claimed that "the spill should [have been] presumed attributable to Wal-Mart because of its self-service method of retail sales. She observe[d] that customers of all ages and abilities are encouraged by Wal-Mart to handle its merchandise and to move it about the store either by hand or by way of shopping baskets and carts that are provided by the store for that purpose. She argue[d] that this method of self-service sales facilitates the creation of hazardous conditions [and that] it is reasonably foreseeable [that those conditions] will result in harm to innocent customers." Id., 434.

The Kentucky Supreme Court agreed, explaining that "[t]he modern self-service form of retail sales encourages the [business'] patrons to obtain for themselves from shelves and containers the items they wish to purchase, and to move them from one part of the store to another in baskets and shopping carts as they continue to shop for other items, thus increasing the risk of droppage and spillage." Id., 435. The court explained further that "[i]t is . . . common knowledge that modern merchandising techniques employed by self-service retail stores are specifically designed to attract a customer's attention to the merchandise on the shelves and, thus, away from any hazards that might be on the floor." Id., 436. The court also stated, however, that,

of *Pimentel* but simply concluded that *Ciminski* was more persuasive. Indeed, although we decided *Kelly* approximately twenty-four years after *Pimentel*, we nevertheless relied expressly on *Ciminski* in adopting the mode of operation rule. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 778, 781, 786, 791. *Pimentel*, on the other hand, is relegated to two string citations in *Kelly*, and not once did we quote that decision. See id., 782, 787.

"[m]ost importantly . . . both logic and fairness mandate that, as between two apparently innocent parties, one being a business proprietor having a duty to maintain his premises in a reasonably safe condition for the use of his customers, and the other being the invited customer, the burden of proof with respect to the cause of an unsafe condition [on] the premises should be on the one with the duty to prevent it." Id. In line with this expression of policy, the Kentucky Supreme Court adopted the following rule: "To balance the competing principles of notice versus duty, the issues of causation and notice should be treated not as elements of the customer's case, but as affirmative defenses of the proprietor. The customer would retain the burden of proving that there was a foreign substance/object on the floor and that such [substance or object] was a substantial factor in causing his accident and injury. Such proof that the premises were unsafe would avoid a summary judgment or directed verdict and shift to the proprietor the burden of proving that his employees did not cause the substance/object to be on the floor and that it had been there for an insufficient length of time to have been discovered and removed or warned of by his employees." (Internal quotation marks omitted.) Id., 435; see also *Gonzales* v. *Winn-Dixie Louisiana, Inc.*, 326 So. 2d 486, 488 (La. 1976) (mode of operation rule properly applied to claim against grocery store arising from slip and fall on spilled olive oil because "the self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise," and, "[w]hen it appears that a third person dropped the foreign substance, the store owner must establish that periodic inspections made and other protective measures taken were reasonable").[17]

---

[17] *Gonzales* has been overruled by statute. See La. Rev. Stat. Ann. § 9:2800.6 (2009). That provision reinstates the traditional requirement of actual or constructive notice.

In *Owens* v. *Publix Supermarkets, Inc.*, supra, 802 So. 2d 315, the Florida Supreme Court adopted an approach similar to those adopted in *Lanier*

It is thus apparent that the courts in each of the foregoing cases applied the mode of operation rule to transitory conditions in self-service retail establishments regardless of where in the store they happened to occur. Moreover, by applying the mode of operation rule in such circumstances, these courts have advanced all of the policy concerns that led this court to adopt the mode of operation rule in the first place. Accordingly, I see no reason why the mode of operation rule should not be applied in such circumstances.

### III

The rule that the majority adopts no longer resembles the mode of operation rule that we adopted in *Kelly*.

and *Gonzales*. Specifically, the court concluded that "the existence of a foreign substance on the floor of a business premises that causes a customer to fall and [to] be injured is not a safe condition and the existence of that unsafe condition creates a rebuttable presumption that the premises owner did not maintain the premises in a reasonably safe condition." Id., 331. The court further concluded that, "once the plaintiff establishes that he or she fell as a result of a transitory foreign substance, a rebuttable presumption of negligence arises. At that point, the burden shifts to the defendant to show by the greater weight of evidence that it exercised reasonable care in the maintenance of the premises under the circumstances. The circumstances could include the nature of the specific hazard and the nature of the defendant's business." Id. Subsequently, the Florida legislature abrogated *Owens* in part when it enacted 2002 Fla. Laws, c. 2002-285, § 1, which is codified at Fla. Stat. § 768.0710 (2007) (repealed 2010). Recently, the Florida legislature restored traditional premises liability law with the passage of Fla. Laws, c. 2010-8, § 1 (to be codified at Fla. Stat. § 768.0755), which became effective on July 1, 2010. In light of this legislation, the majority suggests that we should accord *Owens* little weight. See footnote 26 and accompanying text of the majority opinion. I disagree. Although, for policy reasons, the Florida legislature elected to reject *Owens*, this court is required to make its own determination with respect to the persuasive value of *Owens*. Indeed, the court in *Owens* relied heavily on *Gonzales* in reaching its conclusion, even though the Louisiana legislature similarly has abrogated that case by statute. See *Owens* v. *Publix Supermarkets, Inc.*, supra, 326–27. Similarly, the court in *Lanier* relied on *Owens* even though that case was decided after the Florida legislature passed 2002 Fla. Laws, c. 2002-285, § 1. *Lanier* v. *Wal-Mart Stores, Inc.*, supra, 99 S.W.3d 435. Moreover, in *Kelly*, we relied on both *Owens* and *Lanier*. See *Kelly* v. *Stop & Shop, Inc.*, supra, 281 Conn. 778–79.

Under the new rule crafted by the majority, from today forward, customers injured while shopping at a large, self-service supermarket or department store will be required to prove that the store had actual or constructive notice of the hazard that caused the customer's injury. This step backward is not warranted by anything that the majority has said about *Kelly* specifically or the mode of operation rule generally. Indeed, I see no reason to retreat to a rule that dispenses with foreseeability and applies only to those operations of a self-service business that are deemed to be especially or inordinately dangerous. Because I continue to believe that our analysis and holding in *Kelly* were correct, and that they apply with equal force in the present case, I respectfully dissent.[18]

---

[18] A review of the defendant's remaining claims reveals that they are without merit. Specifically, the defendant contends that the trial court (1) improperly applied the mode of operation rule because the plaintiff had failed to allege it in his complaint, and (2) confused the jury by instructing it on traditional premises liability principles when the plaintiff had abandoned any claim based on those principles. With respect to the defendant's first claim, my review of the plaintiff's complaint indicates that it reasonably can be construed to allege a mode of operation claim, especially in view of the well established rule that complaints are to be construed liberally. See, e.g., *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 83–87, 700 A.2d 655 (1997). With regard to the defendant's second claim, I conclude that the trial court's jury charge was proper.