EVELEIGH, J., dissenting.
I respectfully disagree with the majority opinion. In my view, the trial court properly applied the test from Haynes v. Middletown , 314 Conn. 303, 101 A.3d 249 (2014), and made findings of fact in accordance with that test in rendering judgment in favor of the named plaintiff, Anthony Martinez,[1] in the preset action, which was commenced against the defendants, the city of New Haven (city), the Board of Education of the City of New Haven (board), and Garth Harries, the Superintendent of New Haven Public Schools. This court should not be disturbing the trial court's findings of fact since they are not, in my view, clearly erroneous. Therefore, I respectfully dissent.
The trial court found the following: "Based upon the [the imminent harm to identifiable persons exception to the defense of governmental immunity] as expressed [in Haynes ], this court finds that the plaintiff was [an]
**17 identifiable victim. The court further finds that the harm which the plaintiff was exposed to was foreseeable, and [that] a duty was imposed on [David Scott] Stewart to supervise students and to act immediately to prevent the harm. Therefore, liability ... under General Statutes § 52-557n is found by the court."
Under our case law, the main purpose of charging school officials with a duty of care is to ensure that schoolchildren in their custody are protected from imminent harm. See generally Haynes v. Middletown , supra, 314 Conn. at 303, 101 A.3d 249 (schools have a duty to protect students from imminent harm). The imposition of that duty is predicated, in part, on our settled understanding of the need "to safeguard children of tender years from their propensity to disregard dangerous conditions." (Internal quotation marks omitted.) Strycharz v. Cady , 323 Conn. 548, 578, 148 A.3d 1011 (2016). As this court stated in Strycharz ," it is inarguable that the plaintiff became a member of the identifiable class of foreseeable victims when he arrived at school on the school bus ... [because] his attendance was legally required, and his parents were statutorily mandated to relinquish their protective custody to school officials. Accordingly, we agree with the plaintiff and the trial court that the school officials' duty to protect the plaintiff from imminent harm attached once he arrived at school on the day of the accident." Id., at 576, 148 A.3d 1011. Therefore, I agree with the majority that there can be no question that the trial court was correct when it found that the plaintiff was an identifiable victim in the present case.
Regarding the issue of imminent harm, I respectfully disagree with the majority opinion. In my view, this incident cannot be regarded as an isolated event of two children going to pick up a pair of safety scissors and one accidently getting cut. Rather, I view the case as a failure to *541 supervise the continuum of activity that revolved around two students, one of whom had safety **18 scissors in her hand, chasing another student. In my opinion, this activity, which the trial court found began after Stewart, the assigned supervisor, arrived at 9:15 a.m. and continued for a period of time thereafter, should have been stopped prior to the scissors being dropped. The plaintiff certainly presented enough evidence to allow a determination of fact by the trial court, which was acting as the finder of fact in the present case. The trial court found facts in favor of the plaintiff, and I do not believe that we should be interfering with those findings because they are not clearly erroneous.
In Strycharz , this court held that, "[b]ecause we are unable to conclude, on the basis of the record before us, that a reasonable juror could find that the circumstances were such that the defendants would have been aware of this problem, the defendants are entitled to judgment as a matter of law on this claim." Id., at 590, 148 A.3d 1011. However, in the present case, a teacher specially assigned to an auditorium to supervise students, most of whom are eating breakfast, would have been aware of children running around the auditorium. At the very least, this issue presents a question for the finder of fact-namely, whether it would have been apparent to Stewart that, unless he acted, there was a risk of imminent harm.
Moreover, I disagree, respectfully, with the majority when it downplays the nature of the harm that may be caused by safety scissors. For instance, the majority states that "there is no evidence that possessing safety scissors in the auditorium violated any school policy." While that fact may be true, it belies the real issue, which is whether there was a policy against either horseplay or children running after one another. Even if a specific policy does not exist, in my view, the situation presented an issue of fact that a risk of imminent harm existed. There was certainly a risk of imminent harm created by the horseplay. The child with the scissors **19 could have fallen on the scissors and injured herself or others in the process of the fall. The fact that a child was injured while attempting to pick up the scissors, after the scissors dropped during the horseplay, while unfortunate, was certainly understandable as a direct result of the horseplay.
Second, the majority states that "[t]here is also no evidence that any similar incident had occurred in the past that would have alerted the defendants that additional safety procedures were needed in the auditorium. In fact, Stewart never previously had experienced problems caused by any dangerous student behavior in the auditorium, students running with scissors or otherwise." This was an incident of horseplay. The question of whether such conduct had occurred previously, while important from a notice standpoint for the defendant, does not change the fact that a fact finder could reasonably find that that conduct created a risk of imminent harm. There may not have been a need for additional safety procedures if the teacher had been attentive to his duties of supervision.
Third, the majority states that "[m]oreover, Stewart saw neither the students running nor the safety scissors." Respectfully, this is the central point of my disagreement with the majority. As we stated in Strycharz , the question is whether a reasonable fact finder could find that a teacher "would" have been aware of this problem if he had been executing his duties properly. Strycharz v. Cady , supra, 323 Conn. at 590, 148 A.3d 1011. Certainly, it cannot be enough to excuse one charged with the duty of supervising young schoolchildren that he did not see the challenged activity in a room that he was in charge of *542 supervising. Indeed, if that were the case, every teacher charged with supervision could escape liability by saying that he or she never saw the incident.
In my view, the present case is very similar to Haynes , in which this court held that "[t]he jury reasonably could **20 have inferred from this evidence that the dangerous condition was apparent to school officials. Although this evidence is far from compelling, we are unable to conclude that no reasonable juror could find that it was apparent to school officials that, in combination, the ongoing problem of horseplay in the locker room and the presence of the broken locker were so likely to cause an injury to a student that the officials had a clear and unequivocal duty to act immediately to prevent the harm either by supervising the students ... to prevent horseplay or by fixing the broken locker." (Footnote omitted.) Haynes v. Middletown , supra, 314 Conn. at 325, 101 A.3d 249. In my view, this case is even stronger than Haynes because, in that case, a teacher was not present in the locker room. In the present case, a teacher was physically present in the auditorium. Thus, in my view, a reasonable fact finder could find that it would have been apparent to Stewart that students were engaging in horseplay with a pair of scissors, and that Stewart had a clear and unequivocal duty to act immediately to prevent the horseplay and potential injury. It is axiomatic that the purpose of assigning a teacher to the auditorium was to maintain order, answer questions, and promote student safety.
I note that the majority has criticized the clarity of the trial court's decision. However, "an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." Fisher v. Big Y Foods, Inc. , 298 Conn. 414, 424-25, 3 A.3d 919 (2010). Furthermore, "[w]e read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Internal quotation marks omitted.) Matza v. Matza , 226 Conn. 166, 187, 627 A.2d 414 (1993). In the present case, the trial court applied the proper law to the facts. On the basis of the trial court's findings, I would affirm the judgment of the trial court.
Therefore, I respectfully dissent.

I note that Luz Mercado is also named as a plaintiff in the present action. See footnote 1 of the majority opinion. For the sake of simplicity, I hereinafter refer to Anthony Martinez as the plaintiff.